GATES P. NOYES ET AL. v. GEORGE W. SOUTHWORTH.

*Wills—Revocation by marriage.*

A woman's will is not revoked by her subsequent marriage so long, at least, as no children are born.

Error to Branch. (Pealer, J.) Oct. 14.—Oct. 22.

Proceedings for probate of will. Contestant brings error. Affirmed.

*C. N. Legg* and *John B. Shipman* for appellant. Marriage revokes a will: *Shepard v. Shepard* 7 John. Ch. 57; *Tyler v. Tyler* 19 Ill. 151; *American Board v. Nelson* 72 Ill. 564; *In re Tuller* 79 Ill. 99; *Duryea v. Duryea* 85 Ill. 41.

*Charles Upson* for appellees.

CAMPBELL, J. This is a contest over the will of Cynthia Southworth, made while she was a widow, before her marriage with appellant, and never revoked. Appellant contests it on the sole ground that her subsequent marriage to him was a revocation in law.

The will was made July 27, 1881, she being childless, and all the estate of which she was possessed at her death was owned before she married contestant. They were married February 21, 1882, and she died without children September 28, 1882.

Both the probate and circuit courts of Branch county, where she had resided, sustained the will.

Laying aside such decisions as are made under statutes, the only foundation which has been suggested for holding a woman's marriage to operate as an implied revocation is the common-law rule to that effect, which was based on the effect of marriage on a woman's property and testamentary capacity. By marriage her personalty devolved on her husband, and left nothing for a will to operate on, unless, possibly, such rights in action as should not be reduced to possession during coverture. So it was further held that she could make no testamentary provision during coverture relating to her own property without her husband's concurrence, and this would prevent a revocation, as well as any other testamentary act; and a will cannot be recognized which is not subject to revocation by the testator. These were reasons enough to maintian the common-law doctrine. And the exceptions show that these were the only reasons, for they only extended to wills under powers of appointment, and devises which were suspended during coverture and revived by the husband's death. These doctrines are elementary, and a general reference to the authorities cited on the argument will suffice. See especially for the old doctrine, *Forse & Hembling's Case* 4 Coke 61 and notes to modern editions, and the reference to Plowden 343; also 4 Kent's Comm. 523–527.

Our Constitution has done away with all the disabilities of coverture on this head, and expressly authorized every married woman to make wills of her estate as if she were sole. This leaves her case to be governed by the same rule which would apply to any one else on change of condition. Apart from some decisions based on statutory or peculiar local usages, the doctrine is quite uniform that marriage alone, without birth of issue, will not revoke a man's will. It may be doubtful whether, under our statutes concerning children born subsequently, the birth of issue would have the same significance. That question is not before us. But there is no sound reason that we can perceive why, in the absence of statute, implied revocations should be extended, or should be differently treated as between men and women, when the

property rights of married women have ceased to be hampered by marriage.

We do not think the case calls for the discussion of any doctrines which are not based on the rules and reasons of the common law, and which, when we depart from these, would lead into conjectural and uncertain results.

We think the will was not revoked, and the judgments below to that effect must be affirmed, with costs against contestant.

The other Justices concurred.